```
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK
_____

VERKISHIA K. DAVIS,

                Plaintiff,            14-CV-6650T

        -v-                           DECISION
                                        AND ORDER
CAROLYN W. COLVIN,
Acting Commissioner OF Social Security,

                Defendant.
_____
```

Verkishia K. Davis("plaintiff"), brings this action under Title II of the Social Security Act ("the Act"), claiming that the Commissioner of Social Security ("Commissioner" or "defendant") improperly denied her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") under the Social Security Act (the "SSA").

Currently before the Court are the parties' competing motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  For the reasons set forth below, plaintiff's motion is denied and defendant's motion is granted.

## PROCEDURAL HISTORY

On December 12 and 19, 2011, plaintiff filed applications for DIB and SSI alleging disability as of April 9, 2011. Administrative Transcript ("T.") 153-160, 216.  Following an initial denial of that application, plaintiff and vocational expert ("VE") Peter

Manzi testified at a hearing held, at plaintiff's request, on April 15, 2013 before administrative law judge ("ALJ") John P. Costello. T. 35-85. The ALJ issued an unfavorable decision on May 29, 2013, and a request for review was denied by the Appeals Council on September 20. 2014. T. 1-7, 14-34.

Considering the case *de novo* and applying the five-step analysis contained in the Social Security Administration's regulations (*see* 20 C.F.R. §§ 404.1520, 416.920), the ALJ made, *inter alia*, the following findings: (1) plaintiff met the insured status requirements of the SSA through December 31, 2015; (2) plaintiff had not engaged in substantial gainful activity since April 9, 2011; (3) her cervical disc disease with right shoulder radiation, obesity, depression, anxiety, and adjustment disorder were severe impairments; (3) her impairments, singly or combined, did not meet or medically equal the severity of any impairments listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520[d], 404.1525, 404.1526, 416.920[d], 416.925, 416.926); and (4) plaintiff had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) with the following limitations: occasionally handle and finger with her non-dominant hand and occasionally rotate, flex and extend her neck; perform only simple tasks; and lift two pounds or less with her non-dominant arm. T. 17-21. The ALJ further found that plaintiff had

no past relevant work and that she fit the definition of a "younger individual age 18-49" on her alleged disability onset date. T. 26.

The Appeals Council declined to review the ALJ's decision, and this action ensued. T 1.

## DISCUSSION

I. General Legal Principles

42 U.S.C. § 405(g) grants jurisdiction to district courts to hear claims based on the denial of Social Security benefits. Section 405(g) provides that the District Court "shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). This section directs that when considering such a claim, the Court must accept the findings of fact made by the Commissioner, provided that such findings are supported by substantial evidence in the record.

When determining whether the Commissioner's findings are supported by substantial evidence, the Court's task is "'to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn.'" *Brown v. Apfel*, 174 F.3d 59, 62 (2d Cir.1999), *quoting Mongeur v. Heckler*, 722 F.2d 1033, 1038 (2d Cir.1983) (per curiam). Section 405(g) limits the scope of the Court's review to two inquiries: whether the Commissioner's findings were supported by substantial evidence in

3

the record as a whole and whether the Commissioner's conclusions are based upon an erroneous legal standard. *See Green-Younger v. Barnhart*, 335 F.3d 99, 105-106 (2d Cir.2003).

Plaintiff, 35 years old at the time of her hearing, testified that she experienced migraines, a herniated disc, arthritis in her hands and neck, and arm and hand pain on her right side. Her past work history included customer service and data entry. Plaintiff took pain medication that gave her side effects of dizziness, confusion, sleepiness. Plaintiff could carry and manipulate moderately heavy objects with her left hand, but not her right. Plaintiff described her pain as a six or seven out of ten with mediation, but testified that her pain reached a level ten when the medication wore off. She further testified that she could lift no more than ten pounds, stand for no more than a few minutes, sit briefly before having to stand, and walk no more than half a block.

IV. The Commissioner's Decision Denying Benefits is Supported by Substantial Evidence in the Record.

  **A.  The ALJ's finding at Step Three**.

Plaintiff contends that remand is warranted because the ALJ failed to evaluate plaintiff's severe impairment of cervical disc disease with right shoulder radiation under Listing 1.04A, disorders of the spine, at Step Three of his analysis. Plaintiff's memorandum of law, p. 22-26. Defendant responds although the ALJ did not specifically mention the Listing 1.04A criteria at Step Three, there is ample evidence in other portions of the ALJ's

4

decision to support his Step-Three findings. Defendant's memorandum of law, p. 20-23.

To be considered disabled under Listing 1.04A, plaintiff must demonstrate evidence of a disorder of the spine that results in the compromise of a nerve root or the spinal cord with evidence of nerve root compression. *See* 20 C.F.R. Part 404, Subpart P, Appendix 1, §§ 1.04, 1.04A.  The nerve root compression must be "characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)." 20 C.F.R. Part 404, Subpart P, Appendix 1, § 1.04A.

It is the plaintiff's burden to "demonstrate that her disability [meets] '*all* of the specified medical criteria' of a spinal disorder." *Otts v. Comm'r of Soc. Sec.*, 249 F. App'x 887, 888 (2d Cir. 2007), quoting *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990).  "An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan*, 493 U.S. at 530 (citation omitted).

Here, the ALJ properly analyzed evidence concerning plaintiff's cervical disc disease impairment, and his Step-Three finding is supported elsewhere in his decision.  The ALJ noted that during an August 2011 with her primary care physician, Dr. Matthew

Brown, plaintiff "complained of recurrent right neck and shoulder pain," and, upon examination by the physician's assistant, plaintiff was assessed with "a neck sprain" based on findings of "right trapezius tenderness and spasm but no cervical spine tenderness and normal spinal mobility and curvature." T. 22. During Dr. Brown's October 2011 examination of plaintiff's prolonged neck pain, he found "tenderness to the palpation of the right cervical paraspinal muscles and right trapezius muscle." T. 22. X-rays of plaintiff's cervical spine revealed "mild degenerative changes within the neuroforaminal bilaterally and no acute fracture or subluxation." T. 22. The ALJ further noted that Dr. Brown found that the "x-rays showed some changes consistent with early arthritis but no other changes." T. 22. The ALJ gave great weight to Dr. Brown's opinion concerning plaintiff's capacity to lift, carry, handle, and finger.

The ALJ referred to Dr. Joanne Wu's December 13, 2011 examination at the Unity Spine Center, where MRI findings revealed C5/6 spondylosis with moderate paracentral disc extrusion and no evidence of myelomalacia. Upon examination, Dr. Wu observed "posterior spinal tenderness and right upper trapezius and levator scapulase trigger points but no spinal abnormality," kyphosis, or scoliosis, but she did observe full range of motion in plaintiff's neck, a negative Spurling's test, normal shoulder range of motion and negative impingement signs. T. 22-23. The ALJ noted that there

was "no electrophysiologic evidence of a right cervical radiculopathy or a right median, ulnar or radial sensory neuropathy." T. 23. In August 2012, Dr. Wu found that plaintiff had "posterior spinal tenderness" but that her cervical osteoarthritis was stable; although follow-up visits revealed continued right-side cervical pain. T. 23. The ALJ discussed Dr. Brown's January 22, 2013 examination, which revealed plaintiff's "posterior spinal tenderness and diffuse trigger points in the right upper trapezius." T. 23. It was noted that neurosurgeon Dr. Paul Maurer recommended a cervical discectomy in April 2013 after he observed "moderate weakness in [plaintiff's] biceps and hypesthesia at C6 on the right" side but a well-balanced gait, "symmetric muscle tone and bulk, an unremarkable brainstem and 2+ deep tendon reflexes except for the biceps." T. 23-24. The ALJ gave great weight to Dr. Benjamin Cortijo's consultative medical opinion, which noted plaintiff's disc extrusion, arthritic changes, and tenderness among other things, assessing plaintiff's limitations in lifting, carrying, standing, walking, sitting, and reaching.

Based on the foregoing, the Court finds that the ALJ applied the appropriate legal standards in considering the medical evidence in the record relating to plaintiff's cervical disc disease and properly evaluated plaintiff's treating source and consultative opinions. As for the ALJ's alleged failure to summarize every

aspect of Dr. Maurer's surgical evaluation, the ALJ was not required to "have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability." *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir.1983). There is no indication the ALJ selective chose evidence from Dr. Maurer's decision or the record as a whole to support his Step-Three finding. Consequently, remand is not warranted.

### B. The ALJ's RFC assessment

Plaintiff further asserts that remand is required because the ALJ's RFC assessment is not based on substantial evidence because the ALJ (1) failed to properly explain why his RFC deviated from the severity of limitation opined by Dr. Brown, to which the ALJ gave great weight, and (2) ignored the opinions of Drs. Wu and Nurse Practitioner ("NP") Gross that plaintiff was capable of only sedentary work. Plaintiff's memorandum of law, p. 26-30. Defendant responds that the ALJ's findings are not required to correspond perfectly with any medical opinion in the record and that, in any event, the ALJ also accorded great weight to Dr. Cortijo's much less restrictive opinion. Defendant's memorandum of law, p. 24-28.

In his RFC assessment, the ALJ found that plaintiff was limited to only occasionally handling and fingering with her non-dominant hand, only occasionally rotating, flexing and extending her neck, performing simple tasks, and lifting two pounds or less

with her non-dominant arm.  Contrary to plaintiff's contention that the ALJ's finding is wholly inconsistent with Dr. Brown's opinion, the record reveals that Dr. Brown opined in his medical source statement that she was capable of sustained flexion of the neck and holding her head in a static position occasionally.  T. 488.  However, contrary to plaintiff's contention, the ALJ expressly found that the record failed to support Dr. Brown's opinion that plaintiff was likely to miss work one day per month or be off task 10% of the work day.  In any event, it is well settled that the ALJ is entitled to "credit portions of a treating physician's report while declining to accept other portions of the same report" *Pavia v. Colvin*, 2015 WL 4644537, at *4 (W.D.N.Y. 2015), citing *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002).

Moreover, the ALJ's decision further relied on the consultative opinion of Dr. Cortijo that plaintiff's disc extrusion, arthritic changes, decreased sensation and tenderness did not prevent plaintiff from lifting and carrying 20 pounds occasionally and ten pounds frequently and standing and walking for six hours, and sitting for six hours, in an eight-hour work day.  T. 26, 336; *see Younes v. Colvin*, 2015 WL 1524417, *5 (N.D.N.Y. Apr. 2, 2015)(opinions from state agency medical consultants and may be entitled to greater weight than the opinions of treating sources).  The ALJ noted Dr. Cortijo's finding that plaintiff was, however, limited from reaching over head with her right shoulder.

The Court finds that there is no basis for plaintiff's contention that the ALJ "ignored" the opinions of Dr. Wu and NP Gross, who treated her at the Unity Spine Center. It is well established that "'[t]he RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).'" *Hogan v. Astrue*, 491 F. Supp.2d 347, 354 (W.D.N.Y. 2007), quoting Social Security Ruling 96-8p, 1996 WL 374184, *7 (S.S.A. 1996) and citing *Balsamo v. Chater*, 142 F.3d 75, 80-81 (2d Cir. 1998). In this case, the ALJ's narrative discussion and summary Dr. Wu's treatment notes and plaintiff's treatment at the Unity Spine Center generally indicates his appropriate consideration of those opinions. As stated above, the ALJ was not required to mention every piece of evidence presented to him, and his failure to do so does not indicate that such evidence was not considered. The Court finds that, upon its review of the record as a whole, that the ALJ's RFC assessment is supported by substantial evidence.

C. **The ALJ's credibility finding**

Plaintiff contends that the ALJ "diminished [her] credibility based on inappropriate factors," such as her trip to Egypt and volunteer work with senior citizens. Plaintiff's memorandum of law, p. 30-33. Defendant responds that the ALJ properly applied the two-step credibility framework and considered the factors

enumerated in 404.1529(c)(3), 20 C.F.R. § 416.929 and SSR 96-7p. The Court agrees.

The Court finds that the ALJ's discussion of plaintiff's credibility, which incorporates a review of the testimony, indicates that he used the proper standard in assessing credibility. *See Judelsohn v. Astrue*, 2012 WL 2401587, *6 (W.D.N.Y. June 25, 2012). In his decision, the ALJ specifically stated that he followed the two-step credibility analysis and applied 20 C.F.R. § 404.1529 and SSR 96-7p in assessing plaintiff's credibility. *See Britt v. Astrue*, 486 F. App'x 161, 164 (2d Cir. 2012) (finding explicit mention of 20 C.F.R. § 404.1529 and SSR 96-7p as evidence that the ALJ used the proper legal standard in assessing the claimant's credibility). Moreover, the "[f]ailure to expressly consider every factor set forth in the regulations is not grounds for remand where the reasons for the ALJ's determination of credibility are sufficiently specific to conclude that he considered the entire evidentiary record." *Id.*

Here, the ALJ's conclusion that plaintiff's self-reports and complaints were not credible because they were inconsistent with substantial record evidence, and inconsistent with each other, was based on a proper application of the law and is supported by the record. Although ALJ did mention, among other things, that plaintiff took a 22-hour flight with stopovers during a pleasure trip with a friend to Egypt, it is clear in the decision that he

considered plaintiff's complaints concerning the intensity, persistence, and functional limiting effects of her symptoms against the entire record. Consequently, the ALJ's credibility finding will not be disturbed.

## **CONCLUSION**

For the foregoing reasons the plaintiff's motion for judgment on the pleadings (Docket No. 8) is denied, and defendant's cross-motion for judgment on the pleadings (Docket No. 11) is granted. The ALJ's decision denying plaintiff's claims for DIB and SSI is supported by the substantial evidence in the record. Therefore, the complaint is dismissed in its entirety, with prejudice.

ALL OF THE ABOVE IS SO ORDERED.

                                 S/ MICHAEL A. TELESCA
                                 HONORABLE MICHAEL A. TELESCA
                                 UNITED STATES DISTRICT JUDGE

DATED: Rochester, New York
        December 23, 2015